OLIVER CONSTRUCTION COMPANY *v.* EAST BROTHERS & HARDIN.

## Opinion delivered February 16, 1925.

1.  HIGHWAYS—LIABILITY OF SUBCONTRACTORS.—Subcontractors who fully performed their contract to clear and grade the road and to haul and lay pipes were not responsible for subsequent damage to roadbed caused by the weather, and by the contractor's delay in completing this improvement.

2.  HIGHWAYS—RESPONSIBILITY OF SUBCONTRACTORS FOR DAMAGE.—Where damage to a roadbed during winter was caused by unusually heavy rains, a subcontractor who has done the grading properly is not chargeable with the expense of repairing such damage in his account with the principal contractor.

Appeal from Faulkner Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

*Coleman, Robinson & House,* for appellant.

If a letter is properly mailed, it is presumed that it was received by the party to whom it was addressed

in due course of mail; and, while this presumption may be rebutted by testimony that it was not in fact received, yet the positive, denial by the addressee, that it had been received is not sufficient, as matter of law, to nullify that presumption. 98 Ark. 388; 127 Ark. 498. While uncontradicted evidence should ordinarily be taken as true, and should not be wholly discredited or disregarded if not opposed to probablities, yet such evidence is not necessarily binding on the court or jury, but may be disbelieved where it is contrary to natural or physical laws, opposed to common knowledge, inherently improbable, inconsistent with circumstances in evidence or somewhat contradictory in itself, especially where the witness is a party or interested, or where, in the very nature of things, it is impossible to secure opposing testimony. 23 C. J. 47, § 1791.

Where a subcontractor is bound to correct certain defects in his work, he is chargeable with the actual cost of making such repairs.   148 Ark. 181; 105 Ark. 353.   A contractor is liable for the defects in his work.   147 Ark. 203.   One who first breaks a contract cannot maintain suit to recover upon it.   157 Ark. 220; 251 S. W. 886 (Ark.).

*George F. Hartje,* for appellees.

McCULLOCH, C. J.   Appellant entered into a written contract with a road improvement district in Faulkner County to improve a certain highway known as the Conway and Damascus road and the work of clearing, grading and pipe-hauling was subcontracted by appellant to appellees, a copartnership. . There was a written contract between appellant and appellees, specifying the work to be done, the unit prices therefor, and the time within which it was to be done.   It was provided in the contract between appellant and appellees that the contract between appellant and the road improvement district should be "made a part of this contract, the same as if set out, with the exception of the unit prices."   The contract also provided that appellees should push the

work to a rapid completion not later than July 1, 1921, and that time was to be of the essence of the contract. The contract between appellant and the road improvement district provided that the improvement should be done under the supervision of the engineer of the district and subject to his approval and acceptance.

Appellees commenced this action in the circuit court of Faulkner County, alleging that they had completed their work in accordance with the contract, that the work had been accepted, and that appellant owed appellees therefor the balance demanded in the sum of $9,562.21. Appellant furnished to appellees a statement showing a balance due under a former statement of $6,297.21, which had been held back as retained percentage, and the further sum of $3,265, subsequently earned in completing the contract, making a total of $9,562.21, the amount claimed by appellees, which was allowed under the decree of the court.

Appellant's statement also set forth items aggregating $9,199.05, claimed for expenses paid out by appellant in completing the work according to the requirements of the engineer of the district, and the statement charging these items to appellees shows a balance due to appellees of $363.16. The controversy arises over the items of credit claimed by appellant.

Appellant filed its answer denying that it was indebted to appellees in any sum, and moved that the cause be transferred to the chancery court, which was done without objection, and there was a reference to a master, before whom the testimony was taken, and, after the report of the master came in, the court heard the cause on the testimony thus taken and rendered a decree, as before stated, in favor of appellees for the recovery of the sum of $9,562.21, which was the amount conceded by appellant if the credits claimed be disallowed.

Each of the three appellees testified in the case, as well as other witnesses introduced by them, and it appears from this testimony that appellees completed their work within the time specified in the contract, except a very

small portion, which was pointed out by the engineer, and subsequently performed; that they left their equipments on the ground, ready to do any further work required by the engineer, but that, on October 24, 1921, the engineer went over the work with appellees and accepted the work as completed, whereupon appellees removed their equipment.

Appellees and the other witnesses introduced by them also testified that the work was done in accordance with the contract and that they were not chargeable with the items claimed as credit on appellant's account. They disputed each of the items, and introduced testimony tending to show that they were not proper credits.

Appellant claimed, and undertook to prove, that in April, 1922, the engineer of the district required it to do additional work in the completion of the grading and in repairing damages done to the grade during the winter, and that appellant in turn notified appellees to do this work, that appellees failed to do it, and that it was done at the expense of appellant. There is a conflict in the testimony concerning these items, but, in some respects, the proof is undisputed. Under the contract appellees had nothing to do with the surfacing of the road, as that work was subcontracted to another concern and afterwards taken over by appellant. Appellees were only required to do the work of clearing and grading and hauling and laying the metal piping. If, as contended by appellees, they did their work in accordance with the contract, which was accepted by the engineer, they were not responsible for any damage caused by the delay in doing the grading. Some of the witnesses testified that, in the spring of 1922, it was necessary to do a lot of work to restore the grades on account of damage done during the winter. Witnesses testified that, where the damage was done by unusual rains, the expenses was to fall upon the district, and where the damage was done by ordinary wear of the weather, it was to be repaired by the principal contractor.

Appellant introduced in evidence the written notice from the road improvement district, dated April 14, 1922, the notice being to the effect that the surfacing of the road had not been properly carried on, and that the principal contractor was "not taking proper care of the dump, especially that portion through the Cadron bottom." Appellant also introduced the notice claimed to have been sent by it to appellees, dated April 20, stating that the grading was found to be in a very unsatisfactory condition. One of the witnesses for appellant testified that this notice was mailed to appellees, but each of the appellees testified that no such notice was ever received.

It will be observed that there is a slight difference between the notice from the district to appellant and the one from appellant to appellees. The first notice complains that appellant had not been taking proper care of the dump through the Cadron bottom, which implies deterioration, whereas appellant's notice to appellees implies that the work had not been satisfactorily done. Now, one of the principal items of credit claimed by appellant is the sum of $1,048.83 for labor and additional work on the Cadron levee. The testimony adduced by appellees shows that this deterioration in Cadron bottom was on account of heavy and unusual rains, and, according to the undisputed evidence, that kind of damage was to be repaired at the expense of the district itself. In fact, the undisputed evidence is that appellant was paid in full by the district for all this work under a distinct agreement that it should settle with all the subcontractors. There is other evidence directly to the point that some, if not all, of the work for which credit is claimed was done under what is termed "force account" and paid for by the district. In fact, many of the items of appellant's claim are directly disputed by testimony adduced by appellees. For instance, there is an item of $950.68, claimed to have been paid by appellant to Bolls & McClendon, subcontractors under appellees, but, after one of those parties testified that nothing had been paid to them by appellant, it was admitted that this item should

be eliminated. There is another item of $1,523.28, claimed to have been paid to Hargrove & Stanton, which is disputed by Stanton, who was introduced as a witness, and also another item of more than $1,000, claimed to have been paid to those parties for work on the Cadron levee, whereas Stanton testified that they were paid not exceeding $750, and that this work was done under force account and paid for by the district. There are other circumstances and contradictions in the testimony which it is unnecessary to relate in detail. Suffice it to say that there was a conflict in the testimony, and we cannot say that the finding of the chancellor is not supported by a preponderance of the evidence.

Decree affirmed.

HUMPHREYS, J., not participating.